FILED
DISTRICT OF WYOMING
U.S. DISTRICT COURT

DEC 19 2011

U.S. MAGISTRATE JUDGE

1  JAMI REBSOM
2  Jami Rebsom Law Firm PLLC
   P.O. Box 670
3  Livingston, MT 59047
   Telephone: 406/222-5963
4  ATTORNEY FOR DEFENDANT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF WYOMING YELLOWSTONE NATIONAL PARK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>vs.<br><br>JACK KANE PARRENT JR.,<br>  Defendant | Cause No. 2:11M2105-001<br><br>**MOTION TO SUPPRESS ALCOHOL CONCENTRATION RESULTS** |

COMES NOW, Jami Rebsom, attorney for the above-named defendant, and moves the Court to suppress the blood alcohol concentration levels as the officer in this case violated Mr. Parrent's constitutional rights.

### ARGUMENT

The Court must suppress the blood alcohol results in this case because the officers did not advise Mr. Parrent of his right to refuse the test or that he could fight the action in district court, and because the law enforcement did not wait the twenty minute deprivation period before having Mr. Parrent submit to a breath test.

1

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co*, 2010, 130 S.Ct. 1431, 176 L.Ed.2d 311, held that federal rules apply in procedural matters, and state law must be used in substantive issues.

In this case, the Court must use Wyoming State law to determine if Mr. Parrent's rights to Due Process or the 5th Amendment right against self-incrimination when officers failed to advise him of the implied consent laws of the State of Wyoming.

Wyoming Code Ann. § 31-6-103. Application for hearing; stay of suspension of license; scope of hearing:

> (a) A timely request for a hearing shall stay the suspension until the order following the hearing is entered and all appellate review of the matter is completed, provided the stay of suspension is effective only so long as there is no suspension for a similar violation during the hearing and appeal period.
> (b) The scope of a hearing for the purposes of this act shall cover the issues of whether a peace officer had probable cause to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon a public street or highway in this state in violation of W.S. 31-5-233(b) or any other law prohibiting driving under the influence as defined by W.S. 31-5-233(a)(v), whether the person was placed under arrest, or if a test was administered, whether the test results indicated that the person had an alcohol concentration of eight one-hundredths of one percent (0.08%) or more, and whether, except for the persons described in this act who are incapable of cooperating with the administration of the test, he had been **given the advisements required by W.S. 31-6-102(a)(ii)**. At the conclusion of the hearing, the hearing examiner shall order that the suspension either be rescinded or sustained. If a chemical test was administered, the hearing examiner has the same authority to modify a license suspension under this act as he does under W.S. 31-7-105.

Wyoming Code Ann. § 31-6-102. Test to determine alcoholic or controlled substance content of blood; suspension of license states:

(a) If arrested for an offense as defined by W.S. 31-5-233:

(i) Any person who drives or is in actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol concentration or controlled substance content of his blood. The test or tests shall be:

(A) Incidental to a lawful arrest;

(B) Given as promptly as possible after the arrest;

(C) Administered at the direction of a peace officer who has probable cause to believe the person was driving or in actual physical control of a motor vehicle upon a public street or highway in this state in violation of W.S. 31-5-233(b) or any other law prohibiting driving under the influence as defined by W.S. 31-5-233(a)(v). The peace officer who requires a test for alcohol concentration pursuant to this section may direct that the test shall be of blood, breath or urine. However, if the officer directs that the test be of the person's blood or urine, the person may choose whether the test shall be of blood or urine. The person shall not have the option if the peace officer has probable cause to believe there is impairment by a controlled substance which is not subject to testing by a breath test in which case a blood or urine test may be required, as directed by the peace officer.

(ii) **For tests required under this act, the arrested person shall be advised that:**

(B) If the results of the test indicate the person is under the influence of alcohol or a controlled substance, he may be subject to criminal penalties, his Wyoming driver's license or his privilege to operate a motor vehicle shall be suspended for ninety (90) days and he may be required to drive only vehicles equipped with an ignition interlock device;

(C) After undergoing all chemical tests required by the peace officer at a place and in a manner prescribed by and at the expense of the agency employing the peace officer, the arrested person may go to the nearest hospital or clinic and secure any additional tests at his own expense;

(iii) The results from the test or tests under this act shall only be used for the purposes of determining the chemical concentration as provided by this section and shall not be used for any other purpose.

(b) Results of tests obtained at the arrested person's expense shall be made available to the arresting officer and the arrested person. Disclosure of the test results by the person

administering the test is not a violation of the doctor-patient relationship.

(d) If a person under arrest refuses upon the request of a peace officer to submit to a chemical test designated by the agency employing the peace officer as provided in subsection (a) of this section, none shall be given except in cases where serious bodily injury or death has resulted or upon issuance of a search warrant. A test of the agency's choice may be administered upon issuance of a warrant, including a remotely communicated search warrant, when reasonable under the circumstances and as provided in this subsection. A remotely communicated search warrant may be issued upon sworn or affirmed testimony of the peace officer who is not in the physical presence of a judicial officer, provided the judicial officer is satisfied that probable cause exists for the issuance of the warrant. All communication between the judicial officer and the peace officer or prosecuting attorney requesting the warrant may be remotely transmitted by voice, image, text or any combination thereof, or by other means and shall be recorded. The testimony and content of the warrant shall be recorded by writing or mechanical, magnetic, electronic, photographic storage or by other means. Upon approval, the judicial officer may direct a peace officer or the prosecuting attorney requesting a warrant from a remote location to sign the judicial officer's name on a warrant at a remote location. A remotely communicated search warrant shall be valid only for purposes specified in this subsection.

(e) If the test result indicates the person has an alcohol concentration of eight one-hundredths of one percent (0.08%) or more, the peace officer shall submit his signed statement to the department. Based upon the statement the department shall suspend the person's Wyoming driver's license or his privilege to operate a motor vehicle in this state for ninety (90) days. If a criminal conviction results from the same incident on which a suspension under this subsection is based, the suspension under W.S. 31-7-128(b) or revocation under W.S. 31-7-127(a)(ii) shall be reduced by ninety (90) days. The statement submitted by the officer shall contain:

(i) His probable cause to believe the arrested person was driving or in actual physical control of a motor vehicle:

(A) On a public street or highway in this state;

(B) In violation of W.S. 31-5-233(b) or any other law prohibiting driving under the influence as defined by W.S. 31-5-233(a)(v).

(ii) That a test was taken of the person; and

(iii) The person had an alcohol concentration of eight one-hundredths of one percent (0.08%) or more.

(f) In addition to the signed statement submitted under subsection (e) of this section, the peace officer shall issue the person a temporary license similar to but in lieu of the license authorized under W.S. 31-7-138. This temporary license shall be valid for thirty (30) days, shall not be renewed, shall contain a notice that the person has twenty (20) days from the date of issuance within which to request a hearing from the department and that failure to timely request a hearing will result in the suspension automatically commencing upon expiration of the temporary license or upon expiration of any existing suspension or revocation if the person's license or privilege is suspended or revoked at the time the temporary license is issued. W.S. 31-7-138(d) and (e) apply to a license under this section. For purposes of this section, the peace officer acts as an agent for the department when providing notice of the suspension and notice of the opportunity for a hearing. W.S. 31-7-137 applies to a notice under this act. Failure to demand a hearing within the twenty (20) day period is a waiver of the right of hearing, and the suspension shall commence upon expiration of the temporary license or upon expiration of any existing suspension or revocation if the person's license or privilege is suspended or revoked at the time the temporary license is issued. If a timely demand for hearing is made, the department shall forward the demand to the independent hearing examiner who shall schedule a hearing within forty-five (45) days after receipt of the request and provide the arrested person at least ten (10) days notice of the hearing. The hearing shall be conducted by the hearing examiner. If the hearing examiner fails to schedule the hearing within forty-five (45) days of the request, other than at the request of the licensee, the licensee, as his sole remedy, shall be given credit against any action upheld at the hearing for the time between the expiration of the forty-five (45) day period and the date the hearing was first scheduled.

(g) For the purposes of this section, the signed statement submitted by the peace officer shall be deemed a sworn statement and shall be subject to penalties for perjury.

Wyoming Law § 31-7-307. Implied consent requirements for commercial motor vehicle drivers states:

(a) A person who drives or is in actual physical control of a commercial motor vehicle within this state is deemed to have given consent, subject to the provisions of this section to a chemical test or tests of his blood, breath or urine for the purpose of determining alcohol or controlled substance concentration in his blood.

(b) The test or tests shall be administered at the direction of a peace officer, who has probable cause to believe that the driver was driving or in actual physical control of a commercial motor vehicle in this state while having alcohol or a controlled substance in his system. The peace officer who requires a test pursuant to this section may direct that the test shall be of blood, breath or urine. However, if the officer directs that the test be of the person's blood or urine, the person may choose whether the test shall be of blood or urine. The person has this option unless the peace officer has probable cause to believe there is a controlled substance which is not subject to testing by a blood or breath test in which case a urine test may be required.

(c) For tests required under this section, the person shall be advised that:

(ii) If the results of the test indicate a blood alcohol concentration of four one-hundredths of one percent (0.04%) or more, it shall result in a disqualification for a period of not less than one (1) year to life;

(iii) If the results of the test indicate a blood alcohol concentration of less than four one-hundredths of one percent (0.04%), he shall be placed out-of-service for twenty-four (24) hours;

(iv) He may go to the nearest hospital or clinic and secure any or all required tests at his own expense or any remaining required tests shall be administered by a person at a place and in a manner prescribed by and at the expense of the agency employing the peace officer.

(d) Results of tests obtained at the person's expense shall be made available to the peace officer and the person. Disclosure of the test results by the person administering the test is not a violation of the doctor-patient relationship.

(e) Any person dead, unconscious or otherwise in a condition rendering him incapable of cooperating with the administration of the tests is deemed to have given his consent provided for in this section, and the tests may be administered subject to this section. A chemical test designated by the agency employing

the peace officer may also be administered to a person who refuses to take a test upon issuance of a search warrant, including a remotely communicated search warrant, as provided in W.S. 31-6-102(d). A remotely communicated search warrant shall be valid only for purposes specified in this subsection.

(f) If the person refuses testing or is administered a test which discloses an alcohol concentration of four one-hundredths of one percent (0.04%) or more by weight of alcohol in the person's blood the peace officer shall submit a signed statement to the department. The statement submitted by the officer shall contain:

(i) His probable cause to believe the person was driving or in actual physical control of a commercial vehicle:

(A) In this state;

(B) With alcohol or a controlled substance in his system.

(ii) That a test was requested pursuant to this section; and

(iii) That the person refused to submit to a test or submitted to a test which disclosed an alcohol concentration of four one-hundredths of one percent (0.04%) or more.

(g) Upon receipt of the signed statement of a peace officer submitted under subsection (f) of this section, the department shall disqualify the driver from driving a commercial motor vehicle under W.S. 31-7-305 subject to the hearing provision therein.

(h) A timely request for a hearing shall stay the disqualification until the order following the hearing is entered provided the stay of disqualification is effective only so long as there is no disqualification for a similar violation during the hearing and appeal period.

(j) At the conclusion of a hearing, the hearing examiner shall order the disqualification be rescinded or sustained. The scope of the hearing shall be limited to the issues of:

(i) Whether the peace officer had probable cause to believe the person was driving or in actual physical control of a commercial vehicle with alcohol or a controlled substance in his system;

(ii) Whether the results of a test indicated there was at least four one-hundredths of one percent (0.04%) of alcohol in the person's blood; and

(iii) Whether the person had been given the advisement required in subsection (c) of this section.

(k) Prehearing discovery available to any party is limited to access to the notice of disqualification, signed statement, and any accompanying documentation submitted by the peace officer.

>Other types of discovery available under other laws are not available under this section.
>
>(m) If a person under arrest refuses to submit to a chemical test under this section, evidence of the refusal is admissible in any administrative, civil or criminal action or proceeding arising from acts alleged to have been committed while driving or in actual physical control of a commercial vehicle.

In this case, Ranger Miller had Mr. Parrent submit to a breath sample on the Intoxilyzer 8000. Ranger Miller testified at trial that he did not advise Mr. Parrent of the implied consent advisory under Wyoming Law, when the arrest and test were made in the State of Wyoming. Therefore, Mr. Parrent's rights to Due Process and the 5th Amendment were violated and the Court must suppress and not consider the blood alcohol results in this case.

The United States Supreme Court has evaluated State implied consent laws and has held that they are not unconstitutional because the implied consent laws provide safeguards by providing suspects with their rights to refuse the test, and the consequences of refusing.

For example, the DUI law right to refuse in the South Dakota law specifically declares that refusal to submit to a blood-alcohol test "may be admissible into evidence at the trial." S.D. Comp. Laws Ann. § 32-23-10.1.4 *South Dakota v. Neville*, 1983, 459 U.S. 553, 103 S.Ct. 916. Neville sought to suppress all evidence of his refusal to take the blood-alcohol test, and the circuit court granted the suppression motion for three reasons: 1) the South Dakota statute allowing evidence of refusal violated respondent's federal constitutional rights; 2) the officers failed to advise respondent that the refusal could be used against him at trial; 3) and the refusal was irrelevant to the issues before the court. *Id.* The State appealed from the entire order. The South Dakota Supreme Court, 312 N.W.2d 723 (S.D.1981) affirmed the suppression of the act of refusal on the grounds that § 32-23-10.1, which allows the introduction of this evidence, violated the

federal and state privilege against self-incrimination. *Id.* The court reasoned that the refusal was a communicative act involving respondent's testimonial capacities and that the State compelled this communication by forcing respondent "to choose between submitting to a perhaps unpleasant examination and producing testimonial evidence against himself." *Id.*

Since other jurisdictions had found no Fifth Amendment violation from the admission of evidence of refusal to submit to blood-alcohol tests, the United States Supreme Court granted certiorari to resolve the conflict. *Id.*

As part of its program to deter drinkers from driving, South Dakota has enacted an "implied consent" law. *South Dakota v. Neville,* 1983, 459 U.S. 553, 103 S.Ct. 916. S.D. Comp. Laws Ann. § 32–23–10. This statute declares that any person operating a vehicle in South Dakota is deemed to have consented to a chemical test of the alcoholic content of his blood if arrested for driving while intoxicated. *Id*

South Dakota, however, has declined to authorize its police officers to administer a blood-alcohol test against the suspect's will. *Id.* Rather, to avoid violent confrontations, the South Dakota statute permits a suspect to refuse the test, and indeed requires police officers to inform the suspect of his right to refuse. *Id.* This permission is not without a price, however. South Dakota law authorizes the department of public safety, after providing the person who has refused the test an opportunity for a hearing, to revoke for one year both the person's license to drive and any nonresident operating privileges he may possess. *Id.* Such a penalty for refusing to take a blood-alcohol test is unquestionably legitimate, assuming appropriate procedural protections. *Id.* See Mackey v. Montrym, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979).

South Dakota further discourages the choice of refusal by allowing the refusal to be used against the defendant at trial. *Id.*

The United States Supreme Court Court has held repeatedly that the Fifth Amendment is limited to prohibiting the use of 'physical or moral compulsion' exerted on the person asserting the privilege. *Id.* This coercion requirement comes directly from the constitutional language directing that no person "shall be compelled in any criminal case to be a witness against himself." *Id.*

In *Neville*, the United States Supreme Court noted the State of South Dakota did not directly compel respondent to refuse the test, for it gave him the choice of submitting to the test or refusing. *Id.* Of course, the fact the government gives a defendant or suspect a "choice" does not always resolve the compulsion inquiry. *Id.* The classic Fifth Amendment violation, telling a defendant at trial to testify, does not, under an extreme view, compel the defendant to incriminate himself. *Id.* He could submit to self-accusation, or testify falsely (risking perjury) or decline to testify (risking contempt). *Id.* But the Court has long recognized that the Fifth Amendment prevents the state from forcing the choice of this "cruel trilemma" on the defendant. *Id.* ( See Murphy v. Waterfront Commission, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596, 12 L.Ed.2d 678 (1964)).

In contrast to these prohibited choices, the values behind the Fifth Amendment are not hindered when the state offers a suspect the choice of submitting to the blood-alcohol test or having his refusal used against him. *Id.* Given, then, that the offer of taking a blood-alcohol test is clearly legitimate, the action becomes no less legitimate when the State offers a second option of refusing the test, with the attendant penalties for making that choice. *Id.* The United States Supreme Court noted the State of South Dakota wants suspects to choose to take the test, for the

inference of intoxication arising from a positive blood-alcohol test is far stronger than that arising from a refusal to take the test. *Id.*

The United States Supreme Court recognized that the choice to submit or refuse to take a blood-alcohol test will not be an easy or pleasant one for a suspect to make, however, the criminal process often requires suspects and defendants to make difficult choices. *Id.* The United States Supreme Court held that a refusal to take a blood-alcohol test, after a police officer has **lawfully** requested it, is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination. *Id.*

It is important to see that the United States Supreme Court held the implied consent law of South Dakota did not violate the 5th Amendment to the United States Constitution because safeguards were in place to allow a suspect to be advised of his rights including the right to refuse. The United States Supreme Court stated, "the warnings challenged here, by contrast, contained no such misleading implicit assurances as to the relative consequences of his choice. The officers explained that, if respondent chose to submit to the test, he had the right to know the results and could choose to take an additional test by a person chosen by him. The officers did not specifically warn respondent that the test results could be used against him at trial. Explaining the consequences the other option, the officers specifically warned respondent that failure to take the test could lead to loss of driving privileges for one year. It is true the officers did not inform respondent of the further consequence that evidence of refusal could be used against him in court, but we think it unrealistic to say that the warnings given here implicitly assure a suspect that no consequences other than those mentioned will occur." *Id.*

11

Similarly in *Illinois v. Batchelder,* 1983, 463 U.S. 1112, 103 S.Ct. 3513, the United States Supreme Court determined the implied consent law of Illinois did not violate Due Process rights because the state provided suspects the right to refuse, and consequences of submitting to a test.

In Mackey, the United States Supreme Court held that the Massachusetts statute mandating suspension of a driver's license because of his refusal to take a breath-analysis test upon arrest for driving under the influence of intoxicating liquor did not violate the Due Process Clause of the Fourteenth Amendment. *Id.* The United States Supreme Court stated, "the procedures provided for in the Illinois implied consent statute are, if anything, even more solicitous of Due Process values than those we upheld in Mackey".

We noted in Mackey "that suspension of a driver's license for statutorily defined cause implicates a protectable property interest." *Id.* There, as here, the only question presented was "what process is due to protect against an erroneous deprivation of that interest." *Id.* The United States Supreme Court held that this question should be resolved by considering the following three factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and *the probable value, if any,* of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

First, the driver's interest in the continued possession and use of his license was recognized in Mackey, however, in undertaking the first step of the balancing process in Mackey,

the United States Supreme Court's concern centered on "[t]he duration of any potentially wrongful deprivation of a property interest," *Id.* Under the Massachusetts statute, the license of a driver who refused to submit to a breath-analysis test was suspended pending the outcome of a hearing that he was entitled to demand. *Id.* There is no concern or risk under the Illinois statute that a driver will be deprived of his license prior to a hearing, as the implied consent law clearly grants a driver the right to have a hearing before his license is suspended. *Id.* "[T]he second stage of the inquiry requires consideration of the likelihood of an erroneous deprivation of the private interest involved as a consequence of the procedures used." *Id.* In Mackey, the United States Supreme Court noted "that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Id.* Clearly, then, the fact that statutes provides for a predeprivation hearing abundantly weights this second part of the analysis in favor of the constitutionality of the Illinois implied consent scheme. *Id.*

"The final leg of the balancing test requires us to identify the governmental function involved; also, to weigh in the balance the state interests served by the summary procedures used, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought." *Id.* The interest of the states in depriving the drunk driver of permission to continue operating an automobile is particularly strong. *Id.* That interest is substantially served by the procedures outlined in the implied consent statute. *Id.*

In this case, Mr. Parrent's rights to Due Process were violated when Ranger Miller failed to advise Mr. Parrent of the Wyoming implied consent law before requesting he submit to a breath test. Therefore, based on the above law and the testimony at trial, the Court must suppress the blood alcohol results in this case. The intoxilyzer 8000 must be suppressed at Mr. parent was

not advised of his implied consent advisory and his right to refuse the test. The blood alcohol test of the PBT must be suppressed as the ranger testified at trial he did not wait the 20 minute deprivation period before having Mr. Parrent submit to testing on the PBT.

DATED this 19 day of December, 2011.

By_____
JAMI REBSOM

### CERTIFICATE OF SERVICE

I hereby certify that I served a full, true and accurate copy of the foregoing document on the 19 day of December, 2011, to the following named person:

Lee Pico
P.O. Box 703
Yellowstone National Park 82190
Hand delivered

_____

14