FILED
DISTRICT OF WYOMING
U.S. DISTRICT COURT

JAN 12 2012

U.S. MAGISTRATE JUDGE

# United States District Court
## For The District of Wyoming

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 11-MJ-100 |
| vs. ) | |
| ) | Case No. 2:11M2105-001 |
| JACK KANE PARRENT, JR., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

A trial in the above-entitled matter was conducted on December 14, 2011. The amended criminal complaint, filed on November 9, 2011, was formally placed on record at the start of trial.

The amended criminal complaint charged Defendant with three counts:

> Count I: Defendant did knowingly operate a motor vehicle while under the influence of alcohol to a degree rendering the operator incapable of safe operation, to wit, driving a commercial tour bus, with passengers, from Gardiner, Montana to the Lamar Valley in Yellowstone National Park; in violation of 36 C.F.R. § 4.23(a)(1)- a class B Misdemeanor.

> Count II: Defendant did knowingly operate a motor vehicle with a blood alcohol content greater than 0.08 grams of alcohol per 210 liters of breath, to wit, driving a commercial tour bus, with passengers, from Gardiner, Montana to the Lamar Valley in Yellowstone National Park while having a Blood Alcohol Content over 0.091 grams of alcohol per 210 liters of breath; in violation of 36 C.F.R. § 4.23(a)(2)- a class B Misdemeanor.

> Count III: Defendant did knowingly operate a Commercial Vehicle while on duty with a detectable amount of alcohol, to wit, driving a Commercial Tour Bus, with

1

passengers, from Gardiner Montana to the Lamar Valley in Yellowstone National Park with a blood alcohol content of 0.091 grams of alcohol per 210 liters of breath; in violation of 36 C.F.R. 4.2(b), WS § 31-18-303/WS § 31-18-701, 49 C.F.R. § 392.5(a)(2)- a class B Misdemeanor.

(Am. Criminal Compl.) Defendant entered pleas of not guilty to all three counts.

At trial, the government presented six witnesses: Kevin Stark, Deputy Sheriff Greg Todd, Carlton Newman, Ranger Amanda Wilson, Ranger Brian Chan, and Ranger Russell Miller. The following facts were placed on record.

Defendant and Kevin Stark, drivers for Karst Stage, in Bozeman Montana, drove two commercial buses of ninety middle school students through Yellowstone National Park on June 2 through June 3, 2011. All male students rode in Stark's bus and female students rode in Defendant's bus. On June 2, 2011, after completing a tour of Mammoth Hot Springs, and then dinner at Arch Park, the drivers delivered the male students to the Community Center and the female students to the Church for the night. The drivers were to return at 5:45 a.m. on June 3, 2011, to retrieve the children.

Stark and Defendant checked in to separate rooms at the Super 8 Motel in Gardiner, Montana, at roughly 8 p.m. on June 2, 2011. Thereafter, the two went to dinner at Outlaws Pizza where they consumed roughly one third of a pitcher of beer with their pizza. Next, Stark and Defendant went to the Rusty Rail Lounge and Casino where they consumed vodka with red bull, jagermeister and cranberry with vodka drinks and played casino games. Stark loaned Defendant approximately five hundred dollars for games and drinks. The two left the Rusty Rail shortly after

11:00 p.m., returning to the Super 8 Motel at approximately 11:30 p.m. Stark turned in to his room for the night. Defendant proceeded to downtown Gardiner, Montana.

Deputy Sheriff Todd of the Park County Sheriff's Office was on duty the morning of June 3, 2011. At approximately 2:00 a.m., Officer Todd saw Defendant leave the Two Bit Saloon. Officer Todd made contact with Defendant, who was staggering, stumbling and using slurred speech. Defendant had a difficult time relaying where he was staying, but after discovering his Super 8 room key, the Officer gave Defendant a ride to his Motel and escorted him to his room. The Officer could see Defendant was clearly intoxicated and likely could not make it up the stairs by himself. There is no video or audio recording of this interaction.

Carlton Newman was the night desk clerk at the Super 8 on duty June 3, 2011, and recalls two officers returning Defendant to the Motel. He recalls that Defendant's room was reserved under his boss' (Stark's) name, but they did eventually locate Defendant's room. Newman noted Defendant's television was blaring around 3:30 a.m. He remembered Stark coming to the front desk for a key to Defendant's room around 5:45 a.m. on June 3, 2011. Newman, worried about Defendant's condition, called Karst Stage and left a message that a new driver was probably needed to replace Defendant. Newman also called Yellowstone Dispatch regarding his serious concerns about Defendant.

Ranger Amanda Wilson went on duty around 7:00 a.m. on June 3, 2011. Dispatch informed her that an employee at the Super 8 Motel called to inform them that a commercial driver may be under the influence. Wilson was informed the bus had entered Yellowstone National Park and was

headed in her direction. Wilson observed the bus pass the Tower Ranger Station where she was located. Wilson followed the bus until her superior, Ranger Chan, arrived. Wilson noted that the bus Defendant was driving drove on the fog line and crossed the center line. Ranger Chan arrived while the buses were parked at the East Wildlife Overlook and the two rangers stopped to talk to the bus drivers and passengers.

Ranger Brian Chan received a call from Ranger Wilson on the morning of June 3, 2011. Subsequently, he called Newman to confirm facts. After arriving on scene, he first assisted Defendant who was helping his son after he had vomited due to car sickness. Chan asked Defendant whether he had been drinking the previous night. Defendant stated that he had a few drinks with dinner and after dinner but had no concerns with driving. Chan asked Defendant whether he would do field sobriety maneuvers, but Defendant refused. Defendant did submit to a portable breath test. After breathing too rapidly on the first three tests, on the fourth test, the PBT reading was 0.12, indicating that Defendant had alcohol in his system. Defendant offered to hand over his keys and quit his job immediately. Ranger Chan informed Defendant that he would have to go to Mammoth to blow in an intoxilizer. Ranger Chan noted a stale, fruity odor on Defendant. Ranger Chan placed Defendant in his vehicle, they drove to Fisherman's Pullout (out of the line of vision of the school children) and handcuffed Defendant before proceeding to Mammoth. Before placing Defendant in handcuffs, Ranger Chan permitted Defendant to have a drink of water. Ranger Chan testified that the drive time between Fisherman's Pullout and Mammoth was more than twenty minutes.

Ranger Russell Miller, a certified operator of the Intoxilizer 8000, testified that the twenty

4

minute deprivation period was met before he had Defendant blow into the machine at 9:40 a.m. on June 3, 2011. Two tests were administered. The first result was a 0.091 and the second result was a 0.093 alcohol concentration. Thereafter Defendant was taken to be booked. Ranger Miller conceded that he did not read Defendant a consent advisory, nor did he tell him he could refuse to take the test.

During the course of trial, Defendant objected to the introduction of any breath test results. Defendant did not present any witnesses, and instead moved to suppress the alcohol concentration results. The undersigned is frustrated that counsel for Defendant did not comply with the motions deadlines set by the Court. Because counsel for Defendant did not file a suppression motion in this case prior to trial, the Court granted Defendant five days to submit briefing on the alcohol concentration objections and asked the government to file a timely response. Defendant's suppression motion and the government's response have been filed. (Def.'s Mot. Suppress Alcohol Concentration Results; Gov't's Resp.) The Court has carefully reviewed the submitted materials and being fully advised, finds as follows.

I

Defendant argues the blood alcohol results in this case must be suppressed because the officers did not advise Defendant of his right to refuse the test or that he could fight the action in district court, and because the law enforcement did not wait the twenty minute deprivation period before having Defendant submit to the breath test. (Def.'s Mot. Suppress at 1.)

**A. Consent**

Defendant contends that this Court must use Wyoming State law to determine if Defendant's rights to Due Process or his Fifth Amendment right against self-incrimination were violated when officers failed to advise him of the implied consent laws of the State of Wyoming. (Id. at 2.) The Court disagrees.

The federal implied consent law is applicable to all federal property. See United States v. Love, 141 F.R.D. 315 (D. Colo. 1992). The federal implied consent statute can be found at 18 U.S.C. § 3118. Section 3118 provides:

> (a) Consent.-Whoever operates a motor vehicle in the special maritime and territorial jurisdiction of the United States consents thereby to a chemical test or tests of such person's blood, breath, or urine, if arrested for any offense arising from such person's driving under the influence of a drug or alcohol in such jurisdiction. The test or tests shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving a motor vehicle upon the special maritime and territorial jurisdiction of the United States while under the influence of drugs or alcohol in violation of the laws of a State, territory, possession, or district.
>
> (b) Effect of refusal.-Whoever, having consented to test or tests by reason of subsection (a), refuses to submit to such a test or tests, after having first been advised of the consequences of such a refusal, shall be denied the privilege of operating a motor vehicle [within the] territorial jurisdiction of the United States [for] the period of a year commencing on the date of arrest upon which such test or tests was refused, and such refusal may be admitted into evidence in any case arising from such person's driving while under the influence of a drug or alcohol in such jurisdiction...

Id.

Because Defendant's arrest occurred within the external boundaries of Yellowstone National Park, on federal property, the federal implied consent law controls. See e.g. U.S. v. Farmer, 820

F.Supp. 259, 262-63 (W.D.Va. 1993) and United States v. Love, 141 F.R.D. 315 (D. Colo. 1992). The Wyoming implied consent warning and its attendant procedural requirements are not applicable here.

The question before the Court is whether Defendant had a statutory right to refuse to take a chemical test. Defendant's counsel's briefing on this matter provided little assistance as she focused solely on Wyoming State law, which is inapplicable here. Her briefing ignores the federal implied consent statute altogether. After researching the issue, the Court cannot find binding precedent on this matter. The trial courts are split on whether the federal implied consent statute permits a suspect to refuse to be tested. U.S. v. Rogers, 926 F.Supp. 1000, 1002 (D.Colo. 1996) found that under 18 U.S.C. § 3118, a defendant has a statutory right to refuse to take a chemical test. But, one year later, U.S. v. Sauls, 981 F.Supp. 909, 913 (D. Md. 1997), disagreeing with the Rogers case, determined that a defendant arrested on federal military reservation for driving while intoxicated had no legal right to refuse to take a chemical test under the federal implied consent statute.

This Court is satisfied that under the Federal statute, the defendant had no legal right to refuse to take the chemical test as a refusal is not a permissible choice. Sauls, 981 F.Supp. at 913. This Court agrees with the analysis in Sauls that under the statute, the request found in section (b) is directed to the person administering the test. Id. It is not directed to the person arrested. Id. This reading of § 3118 makes section (a) and (b) complimentary. Rogers' interpretation of section (b), interpreting a right to refuse, is in direct conflict with section (a), which states that consent is

automatic upon the entry into the federal enclave. It is clear that an individual may be compelled to take a chemical test so long as there is reasonable grounds to believe that the person was driving a motor vehicle while under the influence of alcohol or drugs. Id. See also 36 C.F.R. § 4.23(c)(1) (the operator shall submit to tests); (2) (refusal by an operator to submit to a test is prohibited and proof of refusal may be admissible in any related judicial proceeding). Consequently, Defendant's motion to suppress his blood alcohol results on this ground is denied.

### B. Deprivation Period

Defendant's argument that his blood alcohol results must be suppressed because law enforcement officers did not wait the twenty-minute deprivation period before having him submit to the breath test is without merit.

Ranger Chan testified at trial that the drive time between Fisherman's Pullout and Mammoth Hot Springs was more than twenty minutes. Even though Defendant was provided a sip of water at Fisherman's Pullout, the twenty-minute deprivation period was met prior to the administration of the breath test in Mammoth Hot Springs. Because the required deprivation period was met prior to the administration of the breath test, Defendant's suppression motion will not be granted on this basis.

For the reasons discussed above, the Court denies Defendant's motion to suppress his alcohol concentration results.

## II

Based upon all of the evidence presented, the Court finds that the prosecution has proven

beyond a reasonable doubt that Defendant did knowingly operate a motor vehicle with a blood alcohol content greater than 0.08 grams of alcohol per 210 liters of breath, in violation of 36 C.F.R. § 4.23(a)(2). Inasmuch as the Court finds the Defendant guilty of violating 36 C.F.R. § 4.23(a)(2), the additional charge under 36 C.F.R. § 4.23(a)(1) is dismissed. Further, the Court finds that the prosecution has proven beyond a reasonable doubt that Defendant did knowingly operate a Commercial Vehicle while on duty with a detectable amount of alcohol, in violation of 36 C.F.R. 4.2(b), WS § 31-18-303/WS § 31-18-701, 49 C.F.R. § 392.5(a)(2).

The Clerk is directed to serve a copy of this memorandum opinion to all counsel of record and schedule a sentencing hearing.

**SO ORDERED.**

Dated this 12th day of January, 2012.

Stephen E. Cole
United States Magistrate Judge